IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| TOMMY B.,[1] ) | |
|     Plaintiff, ) | Civil Action No. 5:20-cv-00067 |
| ) | |
| v.  ) | REPORT & RECOMMENDATION |
| ) | |
| KILOLO KIJAKAZI, ) | By:   Joel C. Hoppe |
| Acting Commissioner of Social Security, ) |        United States Magistrate Judge |
|     Defendant.[2] ) | |

      Plaintiff Tommy B. asks this Court to review the Commissioner of Social Security's final decision denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). Having considered the administrative record, the parties' filings and oral arguments, and the applicable law, I find that the Commissioner's decision is supported by substantial evidence. Accordingly, I respectfully recommend that the presiding District Judge affirm the decision.

I. Standard of Review

      The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 98–100 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 20 C.F.R. § 404.1505(a).[3] Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

2

or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Tommy applied for DIB in April 2018. R. 214–15. He alleged disability beginning on February 14, 2018, because of spinal osteomyelitis, vertebrae removal, and spinal fusion. R. 231, 234. Tommy was forty-five, or a "younger person," on his alleged onset date. R. 119; 20 C.F.R. § 404.1563(c). Disability Determination Services ("DDS"), the state agency, denied his claim initially in September 2018, R. 119–30, and upon reconsideration that November, R. 132–47. In September 2019, Tommy appeared with counsel and testified at an administrative hearing before ALJ Mark Baker. *See* R. 88–118. A vocational expert ("VE") also testified at this hearing. *See* R. 107–18.

ALJ Baker issued an unfavorable decision on October 4, 2019. *See* R. 11–21. He first found that Tommy had not engaged in substantial gainful activity since February 14, 2018, his alleged onset date. R. 13. Tommy suffered from the following "severe" impairments: right foot osteomyelitis and residual effects of right foot fracture, degenerative disc disease ("DDD") of the lumbar spine with osteomyelitis and residual effects of laminectomy, scoliosis, type 2 diabetes mellitus, neuropathy, and obesity. *Id.* These impairments did not meet or medically equal any relevant Listing. R. 14 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.04, 1.06; SSR 14-2). More specifically, ALJ Baker explained that Tommy's "severe" lumbar DDD with osteomyelitis and

residual effects of laminectomy did not meet or equal Listing 1.04, "Disorders of the Spine," because the medical evidence did "not indicate that it result[ed] in the compromise of a nerve root or spinal cord with evidence of nerve root compression [or] spinal arachnoidids," R. 14; 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(A), (B), or compromise of a nerve root or the spinal cord with "lumbar spinal stenosis resulting in pseudoclaudication," and "no evidence" showed that Tommy was "unable to ambulate effectively as defined in [§] 1.00B2b," R. 14; 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(C).

ALJ Baker then evaluated Tommy's residual functional capacity ("RFC") and found that he could perform a limited range of "light" work.[4] R. 14–15. Specifically, Tommy could "occasionally lift 20 pounds and frequently lift up to 10 pounds"; could "sit up to six hours, and stand or walk for a total of four hours[,] in an eight-hour workday"; needed "a sit/stand option so he can change positions between sitting and standing at intervals of 20–30 minutes while remaining on task"; needed "to use an assistive device, such as a cane, on an occasional basis (up to one-third of the day)"; could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, but never climb ladders, ropes, or scaffolds; could tolerate occasional exposure to vibrations, but no exposure to unprotected heights or moving mechanical parts; and could

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "The full range of light work" requires the ability to "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983). An RFC that allows the claimant to lift up to twenty pounds, but restricts total standing and walking to fewer than six hours during an eight-hour day is often characterized as permitting a "reduced" or "limited" range of light work because the person's capacities for standing/walking fall between what is needed to do "sedentary" work and what is needed to perform the "full range of light work." *Neal*, 2010 WL 1759582, at *2 (explaining that a four-hour standing/walking restriction "exceed[s] the definition of sedentary work" because it permits the claimant to "stand or walk for more than two hours per workday," but "fall[s] short of the full range of light work because [the claimant] cannot stand or walk for six hours per workday"); *see Moore v. Comm'r of Soc. Sec. Admin.*, No. 5:16cv184, 2018 WL 993879, at *3 (N.D. W. Va. Feb. 21, 2018) ("[T]he ALJ appropriately found the plaintiff to be capable of performing a 'limited range' of light work, limited specifically in that she could stand and walk for no more than four hours.").

4

"occasionally operate foot controls with his bilateral lower extremities." *Id.* Based on this RFC finding and the VE's testimony, ALJ Baker found that Tommy could not perform his past relevant work, R. 19, but that he could perform certain "light" unskilled jobs existing in significant numbers in the national economy, *id.*, including assembler, travel-information clerk, and conveyer-line bakery worker, R. 20 (citing R. 108–11). Thus, ALJ Baker concluded that Tommy was "not disabled" from February 14, 2018, through October 4, 2019. R. 20–21.

When Tommy asked the Appeals Council to review that decision, he submitted additional medical records created between March–June 2018, R. 2 (citing R. 66–86), and between October 28, 2019, and May 29, 2020, *id.* (citing R. 33–65). The Appeals Council found that the medical evidence from 2018 did "not show a reasonable probably that it would change the outcome" of ALJ Baker's decision, and it therefore "did not exhibit" that evidence. *Id.* It also found that the evidence created after ALJ Baker issued his decision "did not relate to the period at issue" and therefore did "not affect the decision about whether [Tommy was] disabled beginning on or before October 4, 2019." *Id.* The Appeals Council declined Tommy's request for review in August 2020, R. 1–7, and this appeal followed.

III. Discussion

Tommy raises three arguments challenging the ALJ's denial of benefits. Pl.'s Br. 9–11, ECF No. 14-1. He first challenges the ALJ's purported finding that Tommy's DDD with osteomyelitis and residual effects of laminectomy did "not meet or medically equal the severity of Listing 1.15," *id.* at 9, which is the current Listing for presumptively disabling "[d]isorders of the skeletal spine resulting in compromise of a nerve root(s)," 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15 (eff. Apr. 2, 2021). *See* Pl.'s Br. 9–11 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(A)(1)–(3)). Next, Tommy contends that the Appeals Council erroneously "refus[ed] to

5

review" the medical records created after ALJ Baker issued his decision, asserting that those records contain "new and material" evidence that "confirms" Tommy experienced the "continued pain [and] peripheral neuropathy . . . to meet Listing 1.15." *Id.* at 11–12 (citing R. 2, 35, 44, 52; 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(A)(1)–(2)). Lastly, he challenges the ALJ's finding that he maintained the RFC to perform "light" work, asserting that the ALJ "ignored" his treating physician's opinion that Tommy had extreme functional limitations, *id.* at 13–14 (citing R. 1967–71), and improperly "disregarded" the VE's testimony that a person with those same functional limitations would not be able to maintain full-time competitive work, *id.* at 14–15 (citing R. 115–16). These arguments are not persuasive.

A.   *Listings 1.04 and 1.15*

Tommy first challenges the ALJ's purported finding that his severe spinal impairments did "not meet or medically equal the severity of Listing 1.15." Pl.'s Br. 9. *Contra* R. 14 (evaluating these impairments under Listing 1.04). The Listings are examples of medical conditions that "ordinarily prevent a person from working" in any capacity, "not just [in] substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532–33 (1990) (quotation marks omitted). If a claimant's severe impairment(s) "satisfies all of the criteria of [the corresponding] listing, including any relevant criteria in the introduction," 20 C.F.R. § 404.1525(c)(3), then the claimant is "entitled to a conclusive presumption" that he or she is disabled, *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013) (citing *Bowen v. City of New York*, 476 U.S. 467, 471 (1986)). *See also Zebley*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). To make this determination, the ALJ must identify the correct Listing(s) and "compare[ ] each of the listed criteria" to the relevant evidence in the record. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *see Kiser v. Saul*, 821 F. App'x

6

211, 213 n.1 (4th Cir. 2020) ("[T]he version of the listings in effect as of the date of the Commissioner's final decision controls. . . . [B]ecause the Appeals Council denied Kiser's request for review, the ALJ's decision is the final decision, and we consider Listing 12.05(C) as it existed before it was overhauled.").

ALJ Baker rendered his decision on October 4, 2019. R. 21. Listing 1.15, which replaced the prior Listing 1.04, was not effective until April 2, 2021—eighteen months after the ALJ issued his decision. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 2020 WL 7649906 (Dec. 3, 2020); 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15 (Apr. 2, 2021). As such, the ALJ did not evaluate Tommy's lumbar DDD under Listing 1.15, and thus never found that the impairment failed to meet or equal the severity of that Listing. *See Jones v. Kijakazi*, No. 5:20cv1765, 2021 WL 3856252, at *7 n.6 (D.S.C. Aug. 30, 2021) ("Because Plaintiff's claim and the ALJ's decision was prior to the recission . . . Listing 1.04 remain[s] applicable.").

The ALJ did find, however, that Tommy's severe lumbar DDD did not meet or equal Listing 1.04, which set out the criteria for presumptively disabling Disorders of the Spine at the time of his decision. R. 14. That Listing required objective medical evidence of a specific spinal disorder(s), including spinal stenosis or degenerative disc disease, "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; OR

> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(A)–(C). An "inability to ambulate effectively," *id.* § 1.04(C), meant "an extreme limitation of the ability to walk," generally evidenced by "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a handheld assistive device(s) that limits the functioning of *both* upper extremities," *id.* § 1.00(B)(2)(b)(1) (emphasis added). *See Ezzell v. Berryhill*, 688 F. App'x 199, 200 (4th Cir. 2017). Comparing the objective evidence of Tommy's lumbar DDD with osteomyelitis and residual effects of laminectomy to these criteria, ALJ Baker found the "record [did] not indicate that it result[ed] in the compromise of a nerve root or spinal cord with evidence of nerve root compression, spinal arachnoidids, or lumbar spinal stenosis resulting in pseudoclaudication." R. 14; *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(A)–(C). Moreover, there was "no evidence" Tommy was "unable to ambulate effectively as defined in [§] 1.00B2b," R. 14; *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(C).

Tommy does not challenge these specific findings. *See generally* Pl.'s Br. 9–11. Given the overlap between parts of Listing 1.04 and parts of the new Listing 1.15, however, some of Tommy's arguments do touch on ALJ Baker's finding that his severe lumbar degenerative disc disease did not "*result[] in the compromise of a nerve root or spinal cord* with evidence of nerve root compression, spinal arachnoidids, or lumbar spinal stenosis resulting in pseudoclaudication," R. 14 (emphasis added) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04); *See* Pl.'s Br. 9–10 ("Listing 1.15 first requires that the claimant's musculoskeletal disorder *results in compromise of nerve roots* documented by pain, paresthesia and muscle fatigue, as well as radicular distribution of neurological signs present during physical examination."

8

(emphasis added) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(A), (B)). For example, Tommy notes that he had foraminal stenosis with "pain, paresthesia, and weakness" both before and after his lumbar laminectomy, *see* Pl.'s Br. 10 (citing R. 371, 381, 1558, 2160, 2163), and that those symptoms and signs can be evidence that a spinal disorder "results in compromise of nerve roots" under Listing 1.15, *see id.* at 9–10; 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(A), (B). To meet Listing 1.04, however, Tommy had to produce *objective* medical evidence—such as findings on physical exams or diagnostic images—showing that his lumbar DDD or stenosis "result[ed] in the compromise," or impingement, "of a nerve root (including the cauda equina) or spinal cord" with certain objective abnormalities listed in subsections (A), (B), or (C). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(C)(1)–(E)(2) (requiring objective medical evidence); *id.* § 1.00(K) ("Disorders of the spine, listed in 1.04, result in limitations because of distortion of the bony and ligamentous architecture of the spine *and associated impingement* on nerve roots (including the cauda equina) or spinal cord." (emphasis added)). Tommy's *subjective* reports that he had "low back pain," R. 379, with numbness and tingling, R. 2160, 2163, do not establish that his lumbar DDD or foraminal stenosis resulted in the compromise of a nerve root or spinal cord. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(B)(2)(d) (explaining that the claimant's subjective reports of "[p]ain or other symptoms may be an important factor contributing to functional loss," such as the inability to ambulate effectively required to meet Listing 1.04(C)). Moreover, the objective medical evidence that Tommy cites in his brief does not identify nerve root/spinal cord compromise or impingement, R. 1558–59, and shows that he had full (5/5) strength throughout except in the right lower extremity (4/5) and intact sensation to light touch throughout despite his complaints of lower back pain, R. 379–80; *see also* R. 2163–64. Accordingly, substantial evidence supports ALJ Baker's conclusion that Tommy's severe lumbar DDD did not meet or

9

equal Listing 1.04. *See Bess v. Colvin*, No. 5:13cv108, 2015 WL 686956, at *3 (W.D. Va. Feb. 18, 2015) ("The ALJ's determination that Bess's impairments do not meet or equal a listing is well supported by the lack of relevant objective findings; specifically, there was no indication that Bess suffered from compromise of a nerve root or the spinal cord, findings necessary to meet the first prong of Listing 1 .04, which concerns disorders of the spine."); *Absher v. Barnhart*, No. 2:04cv110, 2005 WL 2100639, at *8 (W.D. Va. Aug. 31, 2005) (affirming ALJ's finding that claimant's lumbar DDD did not meet or equal 1.04 where the "relevant treatment notes contained . . . no objective evidence that Absher suffered from nerve root compromise or spinal cord compromise").

B.      *Evidence Submitted to the Appeals Council*

Tommy next argues that the Appeals Council erroneously "refus[ed] to review" the additional treatment notes created after ALJ Baker issued his decision, *see* Pl.'s Br. 12 (citing R. 2, 35, 44, 52), asserting these records contain "new and material" evidence that "confirms" Tommy experienced "continued pain [and] peripheral neuropathy . . . to meet Listing 1.15," *id.* at 11 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.15(A)(1)–(2); 20 C.F.R. § 404.970(b)). When a claimant appeals an ALJ's ruling, the Appeals Council first makes a procedural decision whether to grant or deny the request for review. *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005). The current (and applicable) version of the governing regulation states, in relevant part, that the "Appeals Council will review a case" if,

> subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the [ALJ's] hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

10

20 C.F.R. § 404.970(a)(5) (2018).[5] The Fourth Circuit has long held that this paragraph's predecessor, 20 C.F.R. § 404.970(b), set "forth a mandatory rule that the Appeals Council must consider any new and material evidence relating to the period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc); *see also Meyer*, 662 F.3d at 704–05 (citing 20 C.F.R. § 404.970(b) (2011)). The current version retains the language that the Appeals Council need "only *consider* additional evidence" submitted to it if the additional evidence "is new, material, and relates to the period on or before the date of the [ALJ] hearing decision," *see* 20 C.F.R. § 404.970(a)(5), (b)–(c) (emphasis added), but it clarifies that "the Appeals Council will *grant review* of a case based on the receipt" of such evidence only "if there is a reasonable probability that the additional evidence would change the outcome of the decision," Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90,987-1, 90,991 (Dec. 16, 2016) (emphasis added) (codified at 20 C.F.R. § 404). *See Jerika C. v. Comm'r of Soc. Sec.*, No. 3:17cv70, 2019 WL 320623, at *3–4 (W.D. Va. Jan. 4, 2019); *Vickie W. v. Berryhill*, No. 7:17cv324, 2018 WL 4604038, at *4–5 (W.D. Va. Sept. 25, 2018).

"Evidence is 'new' if it is not duplicative or cumulative, and [it] is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis*, 392 F. Supp. 2d at 750 (quoting *Wilkins*, 953 F.2d at 96). Evidence "relates to" the relevant period if it provides insight into impairments, symptoms, or functional limitations that the claimant suffered while the ALJ was reviewing his or her case, *Wilson v. Colvin*, No. 7:13cv113 2014 WL 2040108, at *4 (W.D. Va. May 16, 2014), even if the additional evidence was created after the

---

[5] Paragraph (b) in turn explains that "the Appeals Council will only consider additional evidence under paragraph (a)(5) if [the claimant] show[s] good cause for not informing [the agency] about or submitting the evidence" within a certain time before the ALJ hearing. 20 C.F.R. § 404.970(b).

11

ALJ issued his or her decision, *Hull v. Astrue*, No. 5:10cv135, 2012 WL 896343, at *5 (W.D. Va. Mar. 15, 2012). If any later-submitted evidence meets all three criteria, then "the Appeals Council erred in failing to consider" it, *Vickie W.*, 2018 WL 4604038, at *4, and remand may be warranted, *Wilson* , 2014 WL 2040108, at *3–5 (citing *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985)).

The post-dated treatment notes Tommy submitted to the Appeals Council "relate to" the period that ALJ Baker considered in resolving Tommy's disability claim. *Contra* R. 2. Indeed, the additional evidence shows that Tommy continued to report the same subjective symptoms— namely chronic lower back pain with lower-extremity numbness—that ALJ Baker discussed in his decision. *Compare* R. 16 (citing R. 464, 728, 1580, 1656, 1736), *with* R. 34, 40, 49, *and* 52. Tommy reported "[n]o changes" in his chronic back pain at all three visits, R. 34, 40, 49, as well as "chronic peripheral neuropathy [secondary] to back injury" in February and May 2020, R. 44, 52.[6] Contrary to Tommy's assertion, however, these post-dated records are neither "new" nor "material" to the outcome of his disability claim. *Cf. Washington v. Astrue*, No. 1:08cv1120, 2009 WL 3160360, at *15 (S.D. W. Va. Sept. 30, 2009) (additional medical evidence was "not material" to the outcome of disability claim where it was consistent with findings in record before the ALJ). As explained above, Listing 1.15 did not go into effect until April 2021, and ALJ Baker's conclusion that Tommy's severe lumbar DDD did not meet or equal Listing 1.04 because the "record [did] not indicate that it results in the compromise of a nerve root of spinal cord," R. 14, is supported by substantial evidence. Tommy does not point to anything in the

---

[6] The quoted language appears in the "Subjective" and/or "Review of Systems" sections of the treatment notes, R. 34, 40, 43–44, 49, 52, which document the patient's reported symptoms. *See Adams v. Barnhart*, No. 2:05cv51, 2006 WL 1699819, at *9 (W.D. Va. June 13, 2006); 20 C.F.R. § 404.1502(i) ("Symptoms means your own description of your physical or mental impairment."). Conversely, the provider's clinical findings on exam appear in the "Objective" and "Physical Examination" sections of the notes, R. 38, 44, 53. *See* 20 C.F.R. § 404.1502(f)–(g) ("Objective medical evidence means signs, laboratory findings, or both. Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques.").

additional treatment notes showing compromised nerve root or spinal cord. *Cf. Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013) (declining to remand where treatment notes submitted to the Appeals Council did "not identify a condition that the ALJ had not already considered" and did not "identify or describe any functional limitations" suggesting that the claimant's impairment was "more severe that had already been established" in the ALJ's decision). The notes simply document Tommy's subjective statements and providers' findings on three more physical exams, which were essentially normal. *See* R. 38, 44, 53. Tommy did have "decreased sensation in [both] feet" in May 2020, R. 38, but that finding is consistent with prior exams that ALJ Baker discussed in denying Tommy's disability claim, R. 17 ("Physical examinations showed decreased sensation in his lower extremities." (citing R. 379–491)). Accordingly, there is not "a reasonable possibility that [this] evidence would have changed the outcome." *Davis*, 392 F. Supp. 2d at 750 (quoting *Wilkins*, 953 F.2d at 96).

Relatedly, at oral argument, Tommy suggested that the ALJ had not properly considered the evidence of his peripheral neuropathy already included within the record. In support of this contention, he identified only records demonstrating that Tommy took pain medications. *See* R. 1612, 1655. Regarding Tommy's neuropathy, ALJ Baker noted that his EMG demonstrated signs of peripheral neuropathy, that he took gabapentin for his neuropathy, and that he testified that it helped. R. 17. He also noted in his evaluation of the opinion evidence of record that Tommy continued to show numbness in his legs. R. 18. Although the ALJ's analysis short, Tommy does not identify any findings or opinions demonstrating additional functional limitations beyond the decreased sensation already accounted for by the ALJ. As such, I find no error in the ALJ's consideration of the evidence of Tommy's neuropathy.

C.      *Evaluation of Dr. Yen's Opinion*

Next, Tommy argues that the ALJ erred by "ignoring" or "disregarding" the opinion of his treating physician, Chun-Po Yen, M.D. *See* Pl.'s Br. 13–14 (citing R. 18, 1967–71). For claims filed after March 27, 2017, a "medical opinion" is a statement from a "medical source"[7] about what a claimant can do despite his or her impairments and whether one or more impairments causes limitations or restrictions in the claimant's ability to perform physical, mental, and other work demands and to adapt to environmental conditions in the workplace. 20 C.F.R. § 404.1513(a)(2)(i)–(iv). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* § 404.1520c(a); *see also Dowling v. Comm'r of Soc. Sec. Admin.*, 985 F.3d 377, 384 & n.8 (4th Cir. 2021) (explaining that the prior the regulation applicable to claims filed before March 27, 2017, required ALJs to follow a two-step process in determining what weight to give a treating source's medical opinion, and that these opinions generally deserved greater weight than those from non-treating or non-examining sources) (citing 20 C.F.R. § 404.1527 (2016)); *Mastro*, 270 F.3d at 178 ("[T]he ALJ holds the discretion to give less weight to the [opinion] of a treating physician in the face of persuasive contrary evidence." (citing 20 C.F.R. §§ 404.1527, 416.927 (2000)). Instead, the ALJ must adequately explain whether and to what extent every medical opinion in the record is persuasive. *See* 20 C.F.R. § 404.1520c(b). The regulations instruct that supportability and consistency are "the most important factors" and thus the ALJ must expressly address those two factors in evaluating the persuasiveness of an opinion or a finding. *Id.* § 404.1520c(b)(2) ("[W]e

---

[7] A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d).

14

will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in [the] determination or decision."). The ALJ "may, but [is] not required to, explain how" he or she considered other factors, *id.*, including the medical source's specialization and relationship with the claimant, *id.* § 404.1520c(c)(3)–(5). *Compare Dowling*, 985 F.3d at 380 ("[T]he ALJ erred by failing to [explicitly] consider each of the factors listed in 20 C.F.R. § 404.1527(c) before affording only negligible weight" to treating physician's medical opinion, even though substantial evidence supported his decision not to give the opinion "controlling weight" under § 404.1527(c)(2)).

ALJ Baker satisfied this standard. Dr. Yen opined in July 2019 that Tommy's bilateral lower extremity numbness, tingling, and neuropathic pain from osteomyelitis were chronic, severe, constant, and permanent. R. 1967. He found that Tommy could walk "less than one" city block without rest or severe pain; could sit for fifteen minutes at one time before needing to get up; could stand for fifteen minutes at one time before needing to sit or walk around; and could sit for a total of fewer than two hours and stand/walk for a total of two hours during an eight-hour workday. R. 1968. Dr. Yen also opined that Tommy would "need a job that permit[ted] shifting positions at will from sitting, standing or walking," taking an unscheduled ten-to-fifteen-minute break every ten or fifteen minutes, and walking around for five minutes every ten minutes throughout an eight-hour day. He attributed Tommy's need for breaks to muscle weakness, pain, paresthesias, numbness, and low- and mid-back pain, and he found that Tommy would require a cane to walk "at times" because of imbalance, pain, and weakness. R. 1969. Dr. Yen found Tommy could "never" lift or carry any amount of weight at work, *id.*, and he had "significant limitations" using either arm to reach in front of his body or overhead, *see* R. 1969–70 (opining that Tommy could reach in front "20%" of the time, and reach overhead "10%" of the time,

15

during an eight-hour workday). Tommy did not have any restrictions on fine or gross manipulation. *See* R. 1970 (opining that Tommy could use his hands and fingers to manipulate objects for "100%" of an eight-hour workday). Dr. Yen also found that Tommy would miss more than four days of work each month because of his impairments and that his pain or other symptoms would "likely be severe enough to interfere with [the] attention and concentration needed to perform even simple work tasks" for "25% or more" of a normal workday. *Id.*

ALJ Baker acknowledged these limitations in his decision, but he nonetheless determined that Dr. Yen's opinion was "not persuasive" for two reasons. R. 18. First, the limitations were not supported by Dr. Yen's own examination findings. *Id.* Next, the findings were inconsistent with the objective evidence as a whole. *Id.* ALJ Baker then explained his reasoning for concluding that these findings were lacking in both consistency and supportability, noting that "there are no acute findings in [Tommy's] lumbar spine, nor are there indications of recurrent infection" since his lumbar surgery. *Id.* And, although he continued to have numbness in his legs, "his gait has improved and . . . he reports only mild, vague pain in his low back[.]" *Id. Id.* The ALJ concluded that this evidence was more consistent with an RFC for a reduced range of light work with additional restrictions, *id.*, including only four hours standing/walking during the day, "occasional" use of a cane, and a sit/stand option so Tommy could change positions every "20–30 minutes while remaining on task," *id.* at 14–15.

As such, the ALJ explained how he considered the consistency and the supportability of Dr. Yen's opinion, just as the governing regulation require. 20 C.F.R. § 404.1520c(b)(2). He reasonably determined that Dr. Yen's opinion was not supported by even his own findings. *See, e.g.*, R. 1656 (Dr. Yen's August 2018 exam revealing 5/5 strength bilaterally, normal bulk and tone, diminished sensation throughout bilateral lower extremities, and normal and upright gait);

16

R. 1940 (Dr. Yen's December 2018 exam revealing 5/5 strength bilaterally, some numbness over lateral aspect of both legs, normal bulk, normal reflexes); R. 1580 (Dr. Yen's July 2019 notes that Tommy was doing "pretty well" with recovery and had been hunting). Although Tommy identified numerous instances where he reported having pain, he did not identify any treatment notes that contradict the ALJ's determination that Dr. Yen's own observations do not support his opinions. *See* Pl.'s Br. 13–14  The ALJ also reasonably found that Dr. Yen's opinion was inconsistent with the record as a whole. *See, e.g.*, R. 542 (April 2018 exam revealing 5/5 strength bilaterally, subjectively diminished sensation throughout bilateral lower extremities, normal bulk and tone, normal gait); R. 733 (October 2018 exam revealing normal ROM, no tenderness); R. 728 (February 2019 exam with no remarkable findings).

Thus, the ALJ reasonably concluded that the extreme limitations that Dr. Yen identified were not supported by his own findings and were not consistent with the other evidence of record. *See* 20 C.F.R. §§ 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanation presented by a medical source are to support his or her medical opinion . . . the more persuasive the medical opinion . . . will be."), 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be."). Moreover, the ALJ explained, based on references to the evidence, how he reached his conclusion that Dr. Yen's opinion was "not persuasive." Accordingly, I find no error in the ALJ's analysis of Dr. Yen's opinion.

Tommy also contends that the ALJ "disregarded" the testimony of the vocational expert. Pl.'s Br. 14–15. Specifically, he points to the VE's testimony that someone with a few of the limits Dr. Yen identified for Tommy would be precluded from full time, competitive

17

employment. *Id.* (quoting R. 116); *see* R. 116 (attorney asking the VE about employment prospects if someone needed "to walk every ten minutes for five minutes" and took "unscheduled breaks every ten to 15 minutes . . . and that break lasted ten minutes"). The ALJ did not disregard this testimony, as Tommy suggests. Rather, he reasonably found that the evidence did not support a finding that Tommy had the extreme limitations Dr. Yen identified. Indeed, it was "[b]ased on the testimony of the vocational expert" and the RFC finding that ALJ Baker concluded Tommy *could* perform the requirements of certain "light" jobs existing in the national economy. R. 20. As such, contrary to Tommy's contention, the ALJ considered the VE's testimony and accepted it, but he nonetheless reasonably determined that Tommy did not suffer from the extreme limitations posed in the attorney's hypothetical question.

Relatedly, at oral argument Tommy argued that the ALJ had improperly stated that Tommy reported "mild, vague" lower back pain to Dr. Yen when Tommy actually reported this to Dr. Wispelwey. This argument is premised on a misreading of ALJ Baker's decision. ALJ Baker first found that Dr. Yen's opinion was not supported by her own findings and not consistent with the objective evidence as a whole. R. 18. He then discussed both the unsupported findings from Dr. Yen's own examinations and inconsistent findings from other providers' reports in a single paragraph. In other words, the ALJ did not mention Tommy's reports of mild, vague back pain as evidence that Dr. Yen's opinion was not supported by her own findings, *see* R. 18; rather, he reasonably found that Dr. Yen's opinion was inconsistent with Tommy's statements to Dr. Wispelwey. *See* R. 16, 18. As such, the ALJ properly characterized the evidence in his analysis of Dr. Yen's opinion.

IV. Conclusion

18

For the foregoing reasons, I respectfully recommend that the presiding District Judge, **DENY** Tommy's Motion for Summary Judgment, ECF No. 14, **GRANT** the Commissioner's Motion for Summary Judgment, ECF No. 18, **AFFIRM** the Commissioner's final decision, and **DISMISS** this case from the Court's active docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: February 23, 2022

Joel C. Hoppe
United States Magistrate Judge